# BERTIE P. MILLER *v.* MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY

[No. 15, January Term, 1944.]

20

*Decided March 23, 1944.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, MELVIN, and BAILEY, JJ.

*Joseph J. Rehm* for the appellant.

*Jacob S. New* and *J. Cookman Boyd, Jr.,* for the appellee.

BAILEY, J., delivered the opinion of the Court.

By its ordinary life policy No. 584078, issued on September 15, 1922, Massachusetts Mutual Life Insurance Company, the appellee, insured the life of one Frank O. Miller for $5,000. The insured's wife, Bertie P. Miller, the appellant, was named as beneficiary therein. However, the insured reserved the right to change the beneficiary and on November 10, 1939, the policy was amended to read as follows:

"If the policy shall mature as a death claim the proceeds shall be payable in monthly installments (240 stipulated) as provided in Option 'C', to my wife, Bertie P. Miller (born June 4, 1888).

"Upon the death of the survivor of myself and my said wife, any funds then retained by the Company shall be paid in one sum to my brother, George W. Miller, and my sister, Florence G. Miller, equally or to the survivor of them, if living, otherwise to the executors or administrators of such last survivor."

The approval of this amendment by the Company was, on November 13, 1939, indorsed upon the policy and signed by J. L. Marchese, Assistant Secretary.

A subsequent amendment was made on August 24, 1942, approved by the Company and the policy indorsed on August 25, 1942. This amendment reads as follows:

"If the policy shall mature as a death claim, the proceeds shall be payable in monthly installments of $100.00, as provided in Option 'A', to my wife, Bertie P. Miller if living as said installments respectively fall due, otherwise the proceeds, or any balance thereof, shall be paid in one sum to my brother, George W. Miller, and my sister,

Florence G. Miller, equally or to the survivor of them, if living, otherwise as provided in the optional methods of settlement."

The insured died on August 25, 1942, and the net proceeds of the policy, including the face amount and the 1942 dividend, is the sum of $5,026.10. It is conceded that the date of birth of Bertie P. Miller is stated incorrectly in the first amendment and that the correct date is June 4, 1886. It is further conceded that under Option "C", referred to in the first amendment, monthly payments in the amount of $25.08 would continue during the lifetime of Bertie P. Miller, with 240 monthly payments guaranteed, and in the event of the death of Bertie P. Miller prior to the completion of said 240 monthly payments, the commuted value of the remainder thereof would then be payable in one sum to the other beneficiaries designated in said amendment, but that under Option "A", referred to in the second amendment, the monthly payments of $100 would continue until the proceeds of the policy were exhausted, that is to say, for approximately 53 months, or until the earlier death of the said Bertie P. Miller, in which event any balance then remaining would be payable in one sum to the other designated benficiaries.

The appellant has demanded that the Company pay to her the monthly installments of $100 as provided by the second amendment and Option "A" of the policy. The other beneficiaries, George W. Miller and Florence G. Miller, claim that the second amendment is invalid, void and of no effect and have demanded that the Company pay to the appellant only the monthly payments accrued and to accrue under the first amendment and Option "C" of the policy.

Confronted by these conflicting claims and demands, the Company, on November 23, 1942, filed its bill of complaint in the Circuit Court for Baltimore City against Bertie P. Miller, George W. Miller, and Florence G. Miller. The record does not contain a copy of the bill, but it does appear that on the same day and without notice to the defendants, the court entered a preliminary or interlocu-

tory decree, providing among other things, that the plaintiff pay into court the sum of $201.78 and that the defendants interplead. On December 18, 1942, Bertie P. Miller appeared and answered. On April 5, 1943, leave was granted her to withdraw her answer and file a demurrer to the bill. The demurrer was filed on the following day. On May 19, 1943, the demurrer was sustained with leave to file an amended bill within 30 days. The amended bill, which was filed on June 25, 1943, after setting forth substantially the facts with respect to the policy and its amendments and the conflicting claims and demands of the defendants which we have recited above, further alleges that the plaintiff "has no interest, partiality, or favor towards any of said Defendants, and claims no interest in the proceeds of said policy other than its desire faithfully to perform its duty with regard thereto under the terms of said policy, and any valid amendment of the contract embodied therein and while Plaintiff stands ever ready, willing and anxious to perform its said duty, and to satisfy the claim and demand of that Defendant or those Defendants who lawfully establish the right thereto, this Plaintiff, under the circumstances hereinbefore set forth is exposed to the possible hazard, vexation, and expense of several actions at law or equity, and is unable without danger to itself to ascertain which of the claimants, said defendants, is entitled to be satisfied in their said demands".

The Company, in said amended bill, then tenders itself ready and willing to pay into court either the sum of $272.96 under the first amendment or the sum of $1,103.13 under the second amendment, as the court might direct, and further tenders itself ready and willing to continue to make such further payments out of the policy proceeds to the clerk of the court, pending the determination of the cause, and thereafter until the same are thereby exhausted to such of the defendants and in such manner as the court, by its decree, might direct after adjudicating the respective claims and demands of the defendants. The prayers of the amended bill are that the defendants interplead,

that the court determine the manner and amount in which monthly payments thereafter accruing should be paid by the plaintiff out of the proceeds of the policy, that the defendants be restrained from prosecuting any action, either at law or in equity, against the plaintiff for or in respect to the proceeds of the policy, and for general relief.

Again, without awaiting answers from the defendants to the amended bill, the court on the same day passed a preliminary or interlocutory decree directing that the parties defendant interplead, that "the plaintiff pay into the Court the further sum of $800.00, said fund to be deposited in a National Bank, and that the plaintiff continue to pay into this Court each month the further sum of $100, pending the further order of this Court, and that the plaintiff redeposit or repay into the Court the fee and costs heretofore withdrawn or paid out", that all further proceedings in this case be stayed as regards the plaintiff, that an injunction issue restraining the defendants from prosecuting any action against the plaintiff in respect of the proceeds of said policy, that in the interpleader proceedings George W. Miller and Florence G. Miller be the plaintiffs and Bertie P. Miller, the defendant, that the decree passed on November 23, 1942, be rescinded, and that the questions of court costs and counsel fees be reserved for the further determination of the court. On the same day the plaintiff paid into court the sum of $901.35, which was deposited with the sum of $201.78, paid into court by it under the decree of November 23, 1942.

Thereafter, on July 9, 1943, Bertie P. Miller demurred to the amended bill. By its order dated July 16, 1943, the court overruled the demurrer, with leave to the defendant to answer within 30 days. On August 5, 1943, she filed a lengthy answer to the amended bill in which she admits many of its allegations, but denies that the indorsement of November 13, 1939, was placed upon the policy as the corporate act of the plaintiff, and charges that the plaintiff has not maintained a position of impartiality in that it has wrongfully disclosed to the other

defendants certain information which it received from her, that it has refused to recognize and abide by an agreement between the defendants whereby she was to be paid at the rate of $50 per month, in lieu of the payments provided for under either Option "A" or Option "C", and that it should have paid into court the full sum of $5,026.10 due under the policy, with proper interest thereon. There is a general denial of its right to maintain a bill for interpleader under the facts set out in its amended bill of complaint.

On August 17, 1943, the other defendants filed their interpleading complaint setting out in full their contention that the second amendment is a forgery and of no force, effect or validity in law and praying that the same be declared void and of no effect and that payments be made to Bertie P. Miller only as provided in the first amendment.

On August 31, 1943, Bertie P. Miller entered an appeal from the order of July 16, 1943, overruling her demurrer to the amended bill of complaint. Subsequently, on October 28, 1943, a hearing was had on the amended bill and the answer of Bertie P. Miller, testimony was taken before the chancellor and the chancellor entered what he termed a final decree of interpleader, which reads as follows:

"This cause standing ready for hearing upon Amended Bill of Complaint, and Answer thereto of Bertie P. Miller, first defendant herein, testimony having been taken in open Court, and the parties by their counsel duly heard, the proceedings were by the Court read and considered, and it appearing to the Court that the second defendants herein have entered no appearance in these proceedings for the purpose of objecting to the granting of relief to the plaintiff by way of interpleader,

And it further appearing to the Court that pursuant to the decree of this Court dated the 25th day of June, 1943, the plaintiff has paid into this Court the sum of $800, and has repaid into this Court the fee and costs there-

tofore paid out, and is continuing to pay into this Court the sum of $100 each month, all as therein provided.

"And it further appearing to this Court that the plaintiff holds the proceeds of the insurance policy mentioned in the Amended Bill of Complaint for the true owner or owners without having or claiming any right or interest therein, and that it is ready and willing to pay said proceeds in such amounts, installments, in such manner and to whomsoever may have the right thereto.

"It is thereupon this 28th day of October, 1943, by the Circuit Court of Baltimore City, Adjudged, Ordered, and Decreed that the defendant parties to the Amended Bill of Complaint interplead.

"And it is further Ordered that the plaintiff continue to pay into this Court each month the further sum of $100 pending the further order of this Court.

"And it is further Ordered that all further proceedings in this case be stayed as regards the plaintiff, pending the further order of this Court and that as between the defendants an inquiry be made as to their respective claims and demands with respect to the proceeds of said policy, and the manner of payment thereof, and that an injunction be issued restraining the defendants, their counsel, solicitors, agents, and attorneys from prosecuting any action against the plaintiff in respect of the proceeds of said policy in the Amended Bill of Complaint mentioned.

"And it is further Ordered that in the interpleader proceedings herein George W. Miller and Florence G. Miller shall be the plaintiffs and Bertie P. Miller shall be the defendant.

"And it is further Ordered that the plaintiff be at liberty to retain and deduct from the proceeds of said policy the sum of $77.30 for its costs, together with the sum of $150 as a fee to its solicitors for their services in this case."

It is from this decree that the second appeal was taken on November 3, 1943. The appellee has filed motions to dismiss both appeals.

We will consider first the motion to dismiss the first appeal. It has been repeatedly held by this court that an order either sustaining or overruling a demurrer to an entire bill of complaint is not an interlocutory order, but an order in the nature of a final decree, from which an appeal lies under Section 30 of Article 5, Code of 1939. *Young v. Cockman,* 182 Md. 246, 34 A. 2d 428; *Chappell v. Funk,* 57 Md. 465; *Hyattsville v. Smith,* 105 Md. 318, 66 A. 44; *Darcey v. Bayne,* 105 Md. 365, 66 A. 434; *Peoples v. Ault,* 117 Md. 631, 84 A. 60; *Hendrickson v. Standard Oil Co.,* 126 Md. 577, 95 A. 153; *Harlan v. Lee,* 177 Md. 437, 9 A. 2d 839.

But in this case the appellant, after the passage of the order of July 16, 1943, overruling her demurrer to the amended bill and prior to the entering of an appeal from said order, filed her full and complete answer to the amended bill. It was held by this court in *Somerset Rapid Transit Co. v. Mayor and Council of Crisfield,* 126 Md. 368, 94 A. 911, that the effect of the answer upon the demurrer was to overrule it. In that decision the court refers to the case of *County Com'rs of Frederick County v. City of Frederick,* 88 Md. 654, 42 A. 218, 221, where it is said: "But we are not aware of any practice in this state which will permit him to plead or demur to the whole bill, and also at the same time to file an answer to it. By his plea he prays judgment of the court as to whether he shall be required to make further answer to the bill; and the demurrer, while admitting the facts properly stated in the bill, interposes an objection to the plaintiff's further proceeding or requiring the defendant to answer. Hence, if he answers to anything as to which he has pleaded, he thereby overrules his plea, and the same principle is equally applicable to demurring and answering and to demurring and pleading to the whole bill, or to the same part of the bill. *Chase's Case,* 1 Bland 217; Miller Eq. Proc., Sec. 134; 6 Ency. of Pl. and Pr., 414. The result is that the plea and demurrer filed in this case were overruled by the filing of the answer, and must be treated as out of the case." See

also *Morton v. Harrison,* 111 Md. 536, 75 A. 337. The portion of the above quotation which refers to pleas is now inapplicable as pleas in equity were abolished by the adoption in 1919 of General Equity Rule No. 18 (Code 1939, Art. 16, Sec. 179). *Scarborough v. Scarborough,* 170 Md. 222, 183 A. 558; *Moodhe v. Schanker,* 176 Md. 259, 4 A. 2d 453.

Applying the rule laid down in the above decisions to the present case we must conclude that the demurrer is out of the case and that the action of the appellant in appealing from the order overruling the demurrer must be regarded as a nugatory act. It follows, therefore, that the first appeal must be dismissed. In reaching this conclusion we are not unmindful of General Equity Rule No. 20 (Code 1939, Art. 16, Sec. 185) which provided that: "The defendant shall be entitled in all cases by answer to insist upon all matters of defense in law or Equity, to the merits of the bill of which he may be entitled to avail himself by demurrer." But this provision, in almost the identical words, appeared as General Equity Rule No. 23 in the Code of 1888, Art. 16, Sec. 142, was continued in subsequent Codes and was in effect at the time of the decisions in *County Com'rs Frederick County v. City of Frederick,* supra, *Morton v. Harrison,* supra, and *Somerset Rapid Transit Co. v. Mayor and Council of Crisfield,* supra. And it was not availed of by the defendant in this case. Its effect, as stated by the court in *Hill v. Pinder,* 150 Md. 397, at page 406, 133 A. 134, at page 137, "is to postpone any benefit to be derived by this course until at the hearing of the cause." The decision of the court in *Harlan v. Gleason,* 180 Md. 24, 22 A. 2d 579, is not inconsistent with our ruling in this case, as the court was there considering a combined demurrer and answer filed under the authority of General Equity Rule No. 20.

The motion to dismiss the second appeal is based on the contention that the decree of interpleader, entered on October 28, 1943, after the taking of testimony and full hearing before the chancellor on the right of the plaintiff

to maintain its bill, is not a final decree but is only an interlocutory decree, and that no appeal lies therefrom. In support of this contention we are referred to *Miller, Equity Procedure,* page 827, par. 724, where it is stated: "A decree passed upon the filing of a bill of interpleader, ordering the plaintiff to pay money into court, and requiring the defendants to interplead and answer is interlocutory, settling the rights of no party, and is at all times prior to a final decree subject to revision and alteration, being merely auxiliary to further proceedings, and does not require a bill of review to vacate, amend or rescind the same". The author cites as authority for his text the cases of *Barth v. Rosenfeld,* 36 Md. 604, and *Owings v. Rhodes,* 65 Md. 408, 9 A. 903.

In the case of *Barth v. Rosenfeld,* supra, the decree was entered simultaneously with the filing of the bill of complaint, without notice to the defendants. It ordered the plaintiff to pay the money into court, required the defendants to interplead and answer, setting forth their respective claims to the fund, and enjoined further proceedings at law, until further order. It was of the same nature as the two preliminary decrees entered in the instant case, one on November 23, 1942, simultaneously with the filing of the original bill, and the other on June 25, 1943, simultaneously with the filing of the amended bill. Thereafter one of the defendants moved the court to dissolve the injunction and to rescind the decree, so far as the same required the moving defendant to interplead, as premature and inadvertent. This motion was granted. On appeal it was contended that the decree could be vacated only through a bill of review filed within nine months from the date of its passage. In answering this contention the Court says, 36 Md. at page 616: "But the decree in this case was clearly interlocutory, settled the rights of no party; on the contrary, called on the parties to interplead, and was evidently passed prematurely and improvidently. The decree was at all times prior to a final decree, subject to revision and alteration, being merely ancillary to further proceedings, and it is

apparent, its being rescinded, to be renewed again after the answers were filed, was intended to correct the record; by amending which, no party was prejudiced, and from which, of course, no one could appeal."

In the case of *Owings v. Rhodes*, supra, we have the following situation: One Plummer, by his will, gave to his wife, Josephine Plummer, the income from $4,000 during her life, and after her death, the principal was to be divided among certain charitable institutions named in the will; there were several legacies to other parties, and then all the residue of the estate, real and personal, was given to the wife; one Lindsay was named executor; the widow of the testator, being indebted to one Frank Welsh in the amount of $700, executed a mortgage of all her interest in the estate, and Welsh assigned this mortgage to one Rhodes. The validity of this mortgage being subsequently disputed and there being other claims against the widow, the executor filed his bill of complaint, alleging that the Orphans' Court had decided that it had no jurisdiction to determine the matters in controversy and asking that the parties be decreed to interplead, so that their respective rights might he heard and determined. The proper pleadings were then filed in regular procedure, and by its decree the court appointed one Owings as trustee to receive from the executor the $4,000, with interest, to be securely invested in conformity with the provisions of the will. The decree also referred the claims of all the contesting parties to the auditor, with directions to state an account. The auditor's account, which adjusted the matters in controversy between the litigating parties and allowed the claim of Rhodes, was finally ratified and confirmed by the court. Owings, the trustee, refused to pay any of the income from the trust fund to Rhodes, whereupon Rhodes filed his petition, referring to the action of the court in ratifying the auditor's account, which allowed his claim as assignee of the mortgage, and alleging that there was an unpaid balance which the trustee had refused to pay. The trustee, Owings, answered the petition, denying the right of Rhodes

to the sum claimed by him and contending that the rights of all parties to the cause and the duties and liabilities of the trustee were finally fixed and determined, so far as the fund of $4,000, and the income and proceeds thereof were concerned, by the decree of interpleader. In discussing the questions raised by the trustee's answer, the court quotes from *Barth v. Rosenfeld,* supra, and 65 Md. at page 413, 9 A. at page 904, refers to the decree of interpleader as follows:

"This decree was necessarily interlocutory, because, from the very nature of the procedure, there must be a preliminary decree so that the co-defendants may have an opportunity to properly present their conflicting claims, and support them by the introduction of evidence which may form the foundation for the final determination of the court in regard to their respective rights; this being the relief which the plaintiff, who has no pecuniary interest in the contest, asks for in his bill for an interpleader. To this relief he is clearly entitled, and therefore it becomes the duty of the court to pass a preliminary decree."

The court then held that the trustee was bound to apply the income from the fund in the manner directed by the auditor's account. It should be noted that in both of these cases the right of the plaintiff to maintain his bill of interpleader was not questioned and that the right of appeal from the decree of interpleader was not involved.

In the case of *Heald v. Rhind,* 86 Md. 320, 38 A. 43, Chief Judge McSherry cites *Barth v. Rosenfeld,* supra. *Owings v. Rhodes,* supra, and *Miller's Equity Procedure,* supra, in support of the proposition that the decree of interpleader in that case was not a final decree. It appears that by one paragraph of the decree it was adjudged that Heald & Company and several others, having failed to answer the bill of complaint, were entitled to no interest in the fund. At page 322 of 86 Md., at page 44 of 38 A., Chief Judge McSherry says: "This interlocutory decree declaring that Heald & Co. had no interest in the fund merely because they had failed to answer did

not preclude them from asserting a claim at any time before a final decree was passed." Here was an attempt to adjudicate the rights of one of the claimants to the fund in the decree of interpleader and the court held that, as to the right of such claimant to the fund, the decree was interlocutory and not final. The right of the plaintiff to maintain the bill of interpleader was not questioned in this case.

In the case of *Hopkins v. Easton National Bank,* 171 Md. 130, 187 A. 874, upon the filing of the bill of interpleader by the bank, the defendants were summoned. One defendant answered and denied that the other defendant was entitled to the fund or any part of it. The other defendant failed to appear and answer. The matter was submitted to the court, without testimony, and the usual decree of interpleader was entered. The answering defendant then appealed, and the bank filed a motion to dismiss the appeal. On the authority of *Heald v. Rhind,* supra, the court held that the defendant in default had the right to appear at any time before final decree and file its answer to the bill and present its defense. It held further that the decree was not final but interlocutory, and that the appeal must be dismissed. The authorities cited were those which we have discussed above.

The last statement of this court on the question is found in *Maulsby v. Scarborough,* 179 Md. 67, at page 74, 16 A. 2d 897, at page 900, where it is said: "There is a motion to dismiss the appeal on the ground that the decree of interpleader be dismissed because it is interlocutory and not appealable. *Hopkins v. Easton National Bank,* 171 Md. 130, 187 A. 874; *Miller's Eq. Prac.* 827, Sec. 724. If this were only the usual decree of interpleader, the motion would prevail, but included in the decree were the rulings on the demurrers of plaintiff and appellants which required decision before the remand of the case."

In this case some of the defendants demurred to the bill. After their demurrer was overruled, they answered and demurred. All the other defendants having answered,

the decree of interpleader was entered. The court entertained the appeal for the purpose of ruling upon the defendants' demurrer to the bill.

We think the instant case is to be distinguished from all the cases discussed above. In this case the appellant has, in her answer, denied the right of the appellee to maintain the bill of interpleader. Testimony has been taken on this question and the matter submitted to the court. We are of the opinion that, under these circumstances, the decree of interpleader, entered in this case on October 28, 1943, is final in nature in so far as it determines the right of the appellee to maintain its bill of interpleader, which right was contested by the appellant in her answer and in the testimony, and in so far as it adjudicates the appellee a disinterested stakeholder in that it "holds the proceeds of the insurance policy mentioned in the Amended Bill of Complaint for the true owners without having or claiming any rights or interest therein". Where the right to interplead is denied the plaintiff upon demurrer to the bill, there can be no question of the right of the plaintiff to appeal. Supra. And where the right to interplead has been denied and the bill for interpleader dismissed, after testimony, this court has entertained an appeal on the part of the plaintiff. *Phillips v. Taylor,* 148 Md. 157, 129 A. 18. We can, therefore, see no valid reason for denying the right of appeal to a defendant who has contested the right of the plaintiff to require the defendants to interplead by offering evidence in support of the contention and has been unsuccessful, particularly in view of the fact that if the question is raised by demurrer to the bill the appeal will be entertained. While there was no motion to dismiss the appeal in *Emerick v. New York Life Insurance Co.,* 49 Md. 352, this court sustained the right of the plaintiff to maintain its bill of interpleader upon facts similar to the facts in the present case. In *National Bank of New Jersey v. White,* 93 N. J. Eq. 109, 115 A. 533, it was held that in interpleader suits the usual so-called interlocutory decree is interlocutory only as between the defendants, but that as between plain-

tiff and defendants it is a final decree in that it adjudicates the plaintiff's right to bring the suit and to have the relief sought.

In the instant case the appellant has contested the appellee's right to the bill by demurrer, by answer denying the right and by testimony in support of the averments of the answer. The other defendants have admitted the appellee's right to file the bill by filing their interpleading complaint as required by the decree of October 28, 1943. The court, by said decree, has determined that the appellee is entitled to maintain its bill. This is a final adjudication on the particular matter in controversy and we therefore hold that the decree of October 28, 1943, is a final decree and that an appeal lies therefrom under Art. 5, Sec. 30, Code 1939. It follows that the motion to dismiss the second appeal must be overruled.

The cases disclose a lack of uniformity in the practice upon the entering of decrees of interpleader. In some cases the decree seems to be entered simultaneously with the filing of the bill, in others it is entered only after answers admitting the right of the plaintiff to require the defendants to interplead, or if the right is denied, only after a full hearing on the question. We agree with the statement of the court in *Barth v. Rosenfeld,* supra, that a decree entered simultaneously with the filing of the bill is "passed prematurely and improvidently" and it is our opinion that the decree should not be entered until all the defendants have had an opportunity to admit or contest the right of the plaintiff to maintain his bill, either after summons or after the passage of an order to show cause. This view is supported by *Story's Equity Pleadings,* 10th Ed., sec. 297 a, where, in discussing interpleader, it is stated:

"But the defendants, or either of them, are at liberty to contest and deny the allegations in the bill, or to set up distinct and independent facts in bar of the suit; and, in such a case, the plaintiff must reply to the answer, and close the proofs in the usual manner, before he can bring the cause to a hearing between himself and the defen-

dants; and at the hearing only can he insist (if such is his right) upon a decree, that the defendants do interplead."

All the authorities hold that the following conditions are essential to support a bill of interpleader: (1) The defendants must claim the same debt, duty or thing from the plaintiff; (2) all their adverse titles or claims must be connected or dependent, or one derived from the other, or from a common source; (3) the plaintiff must be entirely indifferent between the conflicting claims, asserting no interest in himself in the fund in dispute; (4) he must have incurred no independent liability to either of the claimants, and no act on his part must have caused the embarrassment of conflicting claims and the peril of double vexation. *Pomeroy's Equity Jurisprudence,* 5th Ed., Sec. 1322, p. 906; 15 R. C. L. pp. 223-228; *Miller, Equity Procedure,* par. 722.

The appellant contends that the decree of interpleader should be reversed and the amended bill of complaint dismissed for the following reasons:

(1) Because the several defendants are not making separate, conflicting and rival claims to the fund paid and to be paid into court.

(2) Because the plaintiff has an interest in the subject matter of the proceedings.

(3) Because the plaintiff has not paid the full sum of $5,026.10, the net proceeds of the policy into court.

(4) Because the change of beneficiary by the amendment of November 10, 1939, was not effectively approved by the plaintiff.

(5) Because the plaintiff is bound to fulfill its obligation under the second amendment to the policy.

(6) Because the plaintiff has failed to conduct itself with impartiality and strict neutrality towards all the defendants.

(7) Because it refuses to recognize an agreement between the defendants to distribute the proceeds of the policy in a manner not authorized by either of the amendments.

We will discuss the objections in the order listed. The first objection is based upon the contention that, as the appellant is demanding the payment of $100 per month, interpleader will not lie unless the other defendants are likewise demanding that the same payment be made to them rather than to the appellant. We think that construction is entirely too narrow. The requisite condition is that the defendants must claim the same debt, duty or thing from the plaintiff. There is no dispute about the sum which the plaintiff is holding, $5,026.10; the only dispute between the defendants is as to the manner of its payment, whether under Option "C" or Option "A". The duty owed by the plaintiff to all the defendants is to pay out the fund under whichever amendment to the policy the court shall ultimately determine to be the valid and controlling one. The plaintiff, by its bill, is seeking a judicial determination as to which is the valid amendment and we feel that it is entitled to this relief. *Supreme Commandery United Order of the Golden Cross of the World v. Merrick,* 163 Mass. 374, 40 N. E. 183.

The second contention of the appellant is that the plaintiff has an interest in the subject matter of the proceedings. In the case of *Equitable Life Insurance Company of Iowa v. Johnson,* 222 Iowa 687, 269 N. W. 767, 108 A. L. R. 257, it was held that an insurance company was none the less a disinterested stakeholder entitled to interplead the holders of conflicting claims to proceeds of insurance because, if liable to one, its liability was only for interest on the amount of the policy during her life, with consequent postponement of liability to pay the principal sum, while if liable to the other it must pay the principal sum immediately, and therefore asked that before any deposit be made, the nature and extent of its liability be first determined, when it alleged its readiness to pay into court such amount as the court might direct. In the instant case, no matter which amendment is found to be the controlling one, the duty devolves upon the plaintiff to hold the proceeds and pay out the same in monthly installments. It has no interest in the matter other than

to be protected against having to defend several suits, at law or in equity, and in seeing that the money it holds is paid to the right parties and in the right amounts, after the right parties and the right amounts have been determined by the court. This interest does not act as a bar to its bill of interpleader.

The appellant's third contention is answered by the decision of this court in *Maulsby v. Scarborough,* supra, in which the court recognized the propriety of bills of interpleader in cases where a single sum was not paid, or payable, into court, but regular periodic payments were required because of the nature of the fund involved. Because of the duty imposed upon the appellee by either Option "C" or Option "A" to retain the fund and make periodic monthly payments therefrom, the whole fund could not properly be paid into court. The payments made and the proffer of further payments from month to month are sufficient under the circumstances of this case.

The fourth contention is without merit. The evidence discloses that J. L. Marchese, who signed the indorsement on the policy approving the first amendment, was in fact an assistant secretary of the Company and the failure of the indorsement to contain the name of the Company is immaterial and does not affect the validity of the approval. Further, the appellant's contention with respect to the amount of the monthly payments from the fund is based upon the second amendment, and the approval of the second amendment is indorsed upon the policy and signed by the same individual.

The fifth contention is fully answered in our discussion of the first contention. The whole question to be determined in the final hearing of this case is the validity of the second amendment. If the court holds it valid, the appellee stands ready and willing to distribute the fund accordingly. If it is held invalid, no obligation is conferred upon the appellee thereunder and the fund must be distributed in accordance with the first amendment. *Emerick v. New York Life Insurance Co.,* supra.

38

The sixth contention raises the question of the impartiality of the Company. It is contended by the appellant that the appellee on September 10, 1942, requested certain information from one F. Howard Harvey, who was one of the witnesses to the signature of Frank O. Miller to the second amendment, that this information was forwarded to the appellee by the attorney for the appellant on September 30, 1942, and that the appellee, without the knowledge or consent of the appellant, or her attorney, disclosed this information to the other defendants. The attorney for the appellant was advised of this action of the Company in a letter to him from the assistant to its general agent dated October 8, 1942, and in replying thereto on October 28, 1942, appellant's attorney did not then object and suggested to the Company that the bill of interpleader, if filed, be filed in the Circuit Court for Baltimore City rather than in the Circuit Court for Howard County. While it is true that a party seeking the remedy of interpleader must occupy an impartial position, must not lend himself in any way to further the claim of either party to the fund in controversy, and must always occupy a position of perfect neutrality towards all the defendants, we do not think that the action of the Company here complained of violates any of these general principles. The Company was corresponding with all the claimants in the hope that the claimants could decide among themselves which amendment was valid, and in our opinion the record fails to show that it at any time departed from its position of strict neutrality. Neither of the contesting claimants was convinced by the claims of the other, and the Company then filed its bill for interpleader in the forum suggested by the appellant's attorney. We see no partiality here of which the appellant can complain.

The seventh contention is directed to the refusal of the Company to recognize an agreement in writing between the defendants, dated March 23, 1943, whereby payments from the fund were to be made to the appellant in a manner not authorized by either of the amendments to the policy. The policy provides, under Optional Methods of Settlement, that: "No installment under Option 'A', 'B',

or 'C' may be commuted, transferred, or encumbered by any beneficiary, except upon the written authority of the insured filed with the Company during his lifetime". No such authority was given by the insured and in the absence of such authority we think that the position of the Company was justified. Its duty, both to the insured and the beneficiaries, is to carry out its contract with the insured as expressed in the policy of insurance and the valid amendments thereto. To have recognized the agreement between the defendants and to have made the payments provided therein would have been a violation of this duty. In re Nires, 290 N. Y. 78, 48 N. E. 2d 268, 145 A. L. R. 1368.

There were two exceptions to rulings of the trial Court on evidence. The first was to the action of the Court in admitting the interpleading complaint filed by the defendants, George W. Miller and Florence G. Miller, as required by the final decree of interpleader. It set out in full these defendants' claims with respect to the fund in controversy and its introduction in evidence merely corroborated a fact which was already admitted: that there was a controversy between the respective defendants as to the fund. This was a necessary element for the maintenance of the plaintiff's bill and the Court did not err in admitting the interpleading complaint. The corroboration may have been unnecessary but it was harmless.

The second exception was to the exclusion of the agreement which we have referred to in discussing the appellant's seventh contention as to the impropriety of the remedy of interpleader in this case. It follows from what we have already said there in discussing the agreement that it was properly excluded. The decree of October 28, 1943, will be affirmed and the case remanded for further proceedings.

> *Appeal from the order of July 16, 1943, dismissed, costs to be paid by the appellant.*

> *Decree of October 28, 1943, affirmed, and case remanded for further proceedings, costs to be paid by the appellant.*